**STATE of Iowa, Appellee,**

v.

**Orval Max WRIGHT, Appellant.**

**No. 57170.**

Supreme Court of Iowa.

Oct. 15, 1975.

Davis, Scott & Grace, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and William L. Shelton, Lucas County Atty., for appellee.

Heard before MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

UHLENHOPP, Justice.

This case turns on whether the State retried defendant Orval Max Wright within the required time after the jury failed to reach a verdict in his first trial.

On September 16, 1973, a district judge made the trial assignment in Lucas County, Iowa, for the fourth quarter of 1973, and on the next day the judge filed the assignment. Also on that next day, the grand jury of Lucas County returned an indictment charging defendant with manslaughter. The trial assignment filed by the judge did not contain the indictment against defendant.

On October 8, 1973, defendant pleaded not guilty, and the district judge presiding made a calendar entry that "the County Attorney will assign the case for trial." Defendant made no motion for continuance and engaged in no dilatory tactics.

Thereafter the case was assigned for trial for November 19, 1973, 63 days after the grand jury indicted defendant. On that date, defendant made a motion to dismiss on the ground that the State did not bring him to trial within 60 days after indictment as required by § 795.2 of the Code. Following a hearing, the district court overruled the motion, saying:

It is true a few days past 60 days have passed. The only thing I can do is say this was through no fault or delay on the part of the county attorney or prosecutorial side of this thing. It arose merely from the fact that the Court has only so much time in which to try cases, and that I did set this case as the first criminal case to be tried up here on this particular date.

Trial went forward but resulted in a mistrial on November 21, 1973, as the jury could not agree on a verdict.

At the time of the mistrial, the county attorney asked the judge presiding to set another trial date, but the judge was unable to do so stating "he did not believe he would be trying cases in this district" and suggesting that the case be assigned at the next assignment day. It appears that the judge held court in Polk County during the next quarter.

On December 19, 1973, the present trial court made the trial assignment for the first quarter of 1974. He assigned 11 criminal cases for February 27, 1974, with the present case in tenth place. The retrial date was 98 days after the mistrial. The record does not disclose that defendant or the county attorney had anything to do with the selection of the retrial date. Neither did defendant or the county attorney ask the trial court to advance the date for retrial.

In early January 1974, the county attorney and defense counsel saw each other at a meeting in Des Moines, and defense counsel inquired if the case would really be tried. The county attorney responded he thought it would be. Thereafter defense counsel ordered a transcript of the testimony at the first trial and received it several days before the second trial.

Prior to the second trial date, the cases assigned ahead of the present one went out of the assignment, most of them by guilty pleas. On the retrial date, defendant again moved for dismissal of the case. He urged that the State did not try him within the

required time either on the first or the second occasion. The trial court held a hearing at which the county attorney testified at length and the trial court made an illuminating ruling from the bench. From the record, two factors relating to delay in trial appear.

One factor was delay from docket congestion, which appears to involve an intra-district problem. The county attorney testified:

Nine counties compose this Fifth Judicial District [actually subdistrict 5–B contains nine counties, but for judicial election purposes only]. I know how many judges are available. There are two judges assigned to cover these nine counties . . . . For taking care of routine matters and signing orders, we have a judge available at Chariton [Lucas County] on what we term a service day, which is approximately every three weeks, and then the judges are otherwise available in Chariton when a specific trial date comes up.

The trial court stated in similar vein:

Our schedules are heavy because of the fact that we have considerable travel, and the necessity of servicing the number of counties which we do service, and again, the Court would state for the record that the criminal cases pending in Lucas County, Iowa were assigned at the earliest date that they could be accommodated on December 19, 1973, when the assignment for District Court cases in Lucas County, Iowa was made here.

The court further stated:

As far as the record shows, the reason for the delay, I think, and the most important reason would be the burden that the Court has of trying to transact all the business that comes before it in the several counties that the two judges are compelled to serve.

The second factor causing the delay in retrial of this particular case was the failure of either the county attorney or the

defendant to object to the second assignment and to request an earlier trial date. The court stated:

> The Court was not made aware by either the county attorney or by the defendant or his attorney that there was any dissatisfaction with the assignment date and it is stated heretofore had this dissatisfaction been made known, I'm sure that we would have arranged to repair a schedule some way so that the defendant would be accommodated in having an earlier trial if this is what he desired; but no indication was made by anybody that the trial date was unsatisfactory.

The trial court also stated in its ruling that

> had any demand been made either by the county attorney or by the defendant or by the defendant's attorney that an earlier date be arranged for the trial of this particular case, I think it only fair to state for the record that under those circumstances, the Court would have removed from its schedule some civil cases or cases that had already been assigned in order to accommodate any such request . . . .

The county attorney further testified:

> I don't specifically recall when I received a copy of the assignment executed by Judge A. V. Hass on December 20, 1973, but based on general practice, I probably received it the next day. I did read that assignment. I did not take any affirmative action to contact either Judge Hass or any other judge concerning the setting of the trial again on Orval Max Wright within a 60 day period. It had already been set for today [February 27, 1974]. Once it was assigned, I didn't take any affirmative action to change that date, other than speaking with my out-of-state witnesses.

The trial court overruled the motion to dismiss the case, and trial went forward. The jury found defendant guilty, the trial court imposed sentence, and defendant appealed.

Defendant assigns three errors. We do not consider two of them, as we rest our decision on the remaining one: error in failing to sustain defendant's motion to dismiss the case because it was not retried within the required time. That assignment requires us to consider: (1) the period within which a criminal case must ordinarily be retried after a mistrial, (2) whether docket congestion constitutes good cause for delay in retrial, and (3) whether failure of the accused or the county attorney to object to the retrial date and ask for an earlier date constitutes good cause for delay.

■ I. *Allowable Period for Retrial.* The constitutional guaranty of speedy trial, of course, provides protection in the retrial situation as in all situations, in accordance with the flexible four-factor test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. See *State v. Steadham,* 231 N.W.2d 29 (Iowa). Does a more specific test also apply in the retrial situation? The criminal justice standards state, "A defendant's right to speedy trial should be expressed by rule or statute in terms of days or months running from a specified event." ABA Standards, Speedy Trial § 2.1 (1968). As to the situation in which the "event" is a mistrial, § 2.2(c) states, "The time for trial should commence running, without demand by the defendant, as follows: . . . if the defendant is to be tried again following a mistrial, . . . from the date of the mistrial . . . ."

The difficulty is that in Iowa as in several other states, we do not have a written rule or a statute for the mistrial situation. Our Iowa law setting specific times for criminal trials springs from statute, but the statute deals with the initial trial, not retrial. Code 1975, § 795.2. The pertinent portion of that section provides:

> If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must

order it to be dismissed, unless good cause to the contrary be shown.

Section 795.3 also is inapplicable. That section deals with the granting of a continuance by the court when good cause for delay is shown. No such proceedings occurred here.

Our prior cases on the time limit for retrial do not furnish much guidance. *State v. Enke*, 85 Iowa 35, 51 N.W. 1146; *Davison v. Garfield*, 219 Iowa 1258, 257 N.W. 432; *State v. Manning*, 224 N.W.2d 232 (Iowa); *State v. Steadham*, 231 N.W.2d 29 (Iowa). At the time of *Enke* and *Davison*, the statute expressed the time period as the next term, rather than 60 days. In *Enke* this court merely held a retrial to be timely which occurred at the next term following mistrial. In *Davison* the court appears to have held, without explanation, that a case which went over three terms without retrial had to be dismissed. In *Manning* the delay in retrial which the defendant complained of was self-inflicted. In *Steadham* the time lapse from mistrial to retrial was less than 21 days, so no problem of delay existed.

Some courts confronted with the question of the applicable period for retrial have held that the statutory period applicable to the initial trial begins to run anew upon mistrial. *In re Begerow*, 133 Cal. 349, 65 P. 828; *People v. Jonas*, 234 Ill. 56, 84 N.E. 685; *Pickle v. Bliss*, 418 P.2d 69 (Okl.Cr.). Other courts hold that the statute governing the period for the initial trial does not apply in the retrial situation; they do not agree, however, on what the time standard should be. *Ruester v. Turner*, 250 So.2d 264 (Fla.); *Glover's Case*, 109 Mass. 340 (matter of judicial discretion); *State v. Fromkin*, 174 Neb. 849, 120 N.W.2d 25; *State v. Dilts*, 76 N.J.Law 410, 69 A. 255; *State v. George*, 271 N.C. 438, 156 S.E.2d 845; *State v. Lamphere*, 20 S.D. 98, 104 N.W. 1038.

▮ We do not think we can say that § 795.2 begins to run anew; such a holding would do violence to its language. On the other hand, it seems anomalous that the State must initially try the accused within 60 days but thereafter must only meet the more general *Wingo* test. Cf. Dunahoo & Sullins, Speedy Justice, 22 Drake L.Rev. 266, 291 ("no logical reason appears as to why either contingency [remand or mistrial] should not stand in the place of an indictment"). Especially is this true in view of our repeated statement that the 60-day statutory period reflects the legislature's conception of a speedy trial. *State v. Bowers*, 162 N.W.2d 484, 487 (Iowa).

We are impressed by the reasoning of the Nebraska Supreme Court in *State v. Fromkin*, 174 Neb. 849, 858, 120 N.W.2d 25, 30. That court held the statute governing the time for initial trial is inapplicable to retrial; the time for retrial is a reasonable time, within the trial court's discretion; but since the legislature had indicated its conception of a reasonable time for the first trial, the court would adopt that same time period as a reasonable time for retrial. The court stated:

> We hold, therefore, that the statute, as such, does not apply a second time; and that it has run its course with compliance to the first trial. But, we hold that independent of the statute, the retrial, or retrials, must be held within a reasonable time within the sound discretion of the court. We further hold that since we have held that the statutory provision was a reasonable one as to the outside limits of time permitted for a first trial, that the time limit for a retrial, or retrials, should be fixed as not extending beyond what we have held to be reasonable for the first trial. It, therefore, appears that the rule is, after the statutory requirements are satisfied as to the first trial, the time for retrial is not a matter of absolute right, but is left to the sound discretion of the court; provided, that it may not extend beyond the statutory limit provided for the first trial.

We thus hold as a rule of this court that criminal cases must be retried within 60 days after mistrial, if the case is to be

retried. We also hold the principle that delay may be excused by good cause is as applicable to retrial as it is to the initial trial.

Retrial here commenced 98 days after mistrial. Has the State shown good cause for the delay?

■ II. *Docket Congestion.* The first reason the State assigns as good cause for not retrying this case sooner is docket congestion. The record indicates that the congestion is chronic. Chronic court congestion is not good cause for delay in trial of criminal cases. *State v. Hines,* 225 N.W.2d 156 (Iowa).

We gather from the record that the docket congestion involved here stems from the conception of the southern nine counties in the Fifth District as a separate district. The statute provides, "For *all* judicial purposes [except judicial elections] the state is divided into eight judicial districts as follows: . . ." Code 1975, § 602.18 (italics added). The statute then divides the state's counties into eight districts. The Fifth District contains 16 counties, including the nine southern-most counties mentioned in the testimony here. The section further provides a formula for determining the number of judges in each district. This Fifth District had 18 judges at the time of these events.

■ We appreciate that the Fifth District has a large civil and criminal caseload. But criminal cases must nonetheless be disposed of promptly throughout the district, even at the cost of deferring civil cases throughout the district if necessary. See *Davison v. Garfield,* 221 Iowa 424, 427, 265 N.W. 645, 646 ("In view of the peremptory duty imposed on the trial court by Code § 14024 [now § 795.2], we are of the opinion, under the facts as shown in this record, that it was not within the discretion of the trial court to devote the January term to the equity assignment and other local business to the exclusion of the trial of these two indictments."). We are also aware that the

Fifth District comprises a large territory. However, the judges of the trial court in this state are *district* judges. § 602.3.

We do not suggest that the time of judges should not be utilized efficiently. But judicial service throughout the whole district has priority, and judicial service in criminal cases is mandatory because of the speedy trial requirement.

■ We hold that the docket congestion shown here is not good cause for the delay in the retrial of this prosecution.

III. *Failure to Demand Earlier Trial.* The other reason the retrial did not occur earlier was the failure of either defendant or the county attorney to ask that the date for retrial be advanced.

■ Defendant and his attorney failed to ask for an earlier retrial date, but the onus was not on them to do so. *State v. Gorham,* 206 N.W.2d 908 (Iowa). The burden is on the *State* to provide a speedy trial. *State v. Jennings,* 195 N.W.2d 351 (Iowa). This is not a case in which defense counsel was asked to say whether he desired an earlier trial, and made no response. See *State v. Ellington,* 200 Iowa 636, 204 N.W. 307. So far as the record shows, neither defendant nor his attorney were asked about a retrial date. That defendant was standing on his right to a speedy trial was evident from his first motion to dismiss, made when the case was not tried within 60 days after indictment. The failure of defendant or his attorney to object or to ask for an earlier retrial date is not good cause for the 98-day delay.

■ Failure of the county attorney to ask that retrial be expedited cannot be good cause. He is the one who must press for speedy trial; he is the prosecutor. *State v. Nelson,* 222 N.W.2d 445 (Iowa). If trials of the county attorney's prosecutions are set for dates beyond the required period and he simply lets the trial assignment stand, he assumes the risk that his prosecutions will be dismissed in the absence of good cause.

The record contains mention of out-of-state witnesses for the prosecution and of a transcript of the first trial ordered by defense counsel, but the Attorney General does not seriously urge those matters as good cause for the delay.

The case was not retried within the required time and good cause for the delay has not been shown. We return the case to district court for dismissal of the indictment.

Reversed and remanded.